

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MTK
F. #2016R00614

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 11, 2018

<u>By Hand and ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Ekram Sejdija</u>
               <u>Criminal Docket No. 17-404 (S-1)(KAM)</u>

Dear Judge Matsumoto:

      The government respectfully submits this letter in advance of the defendant Ekram Sejdija's sentencing in the above-captioned case, which is scheduled for December 21, 2018 at 11:00 a.m. On March 22, 2018, the defendant pleaded guilty pursuant to a plea agreement before Your Honor, to one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). For the reasons set forth below, the government respectfully requests that the Court impose a sentence of incarceration at or near 16 months, the top end of the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines").

    I.    <u>Background</u>

      The Pre-Sentence Investigation Report ("PSR") accurately sets forth the offense conduct. On or about May 31, 2017, the defendant's co-conspirator, Albert Veliu, received $180,000 in cash from a DEA confidential source who represented the funds to be proceeds of narcotics trafficking. PSR ¶ 31. On June 2, 2017, the defendant provided Albert Veliu's brother, Alban Veliu, with a $50,000 check in exchange for $50,000 in cash. <u>Id.</u> ¶ 32. On June 6, 2017, Alban Veliu provided the DEA confidential source with the defendant's "clean" check. The check was dated June 9, 2017 and written on the account of the defendant's company, "V&E General Construction LLC." <u>Id.</u> ¶ 33. On June 8, 2017, the defendant texted Albert Veliu and reminded Veliu to provide him with the agreed upon fraudulent invoices that could be used to support the illicit $50,000 check.

II.  Guidelines Calculation

The government's Guidelines calculation, as set forth in the parties' plea agreement, is as follows:

| | |
|---|---:|
| Base Offense Level (§ 2S1.1(a)(2)) | 8 |
| Plus: Funds exceeded $40,000 (§ 2B1.1(b)(1)(D)) | +6 |
| Plus: Conviction under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)(B)) | +2 |
| Total: | <u>16</u> |

The Probation Department calculated that the defendant's criminal history score is 0, and that his criminal history category therefore is I. PSR ¶ 70. After two levels are subtracted from the total offense level of 16 to reflect the defendant's acceptance of responsibility, the resulting offense level is 14. This results in an applicable Guidelines range of 15 to 21 months' imprisonment.

Probation, however, calculated a lower applicable Guidelines range based on the application of a two-level minimal role reduction, pursuant to U.S.S.G. § 3B1.2(b) See PSR ¶ 61. The government does not object to this two-level reduction. Accordingly, the government agrees that the total offense level is 12. This results in an applicable Guidelines range of 10 to 16 months' imprisonment.

III.  Analysis

The government respectfully submits that a top of the Guidelines sentence is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). Interpreting the Supreme Court's decision in United States v. Booker, the Second Circuit has held that "sentencing judges remain under a duty with respect to the Guidelines . . . to consider them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005). "While district courts enjoy discretion following Booker, that discretion must be informed by the § 3553(a) factors[.]" Id. at 132 (internal quotation marks omitted). In this case, the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a top of the Guidelines sentence.

A top of the applicable Guidelines sentence is appropriate because it reflects the seriousness of the defendant's crime of participating in a conspiracy to launder funds, while also accounting for his acceptance of responsibility in pleading guilty, and his personal history and characteristics. The defendant was a willing participant in a scheme that laundered over $800,000 dollars in cash which was represented to be narcotics proceeds by a DEA confidential source. Indeed, the recorded conversations captured between Albert Veliu and the defendant demonstrate the defendant's eagerness to assist Veliu in laundering the funds. Moreover, the defendant's insistence that he receive "papers," i.e., fraudulent invoices, to support the "clean" checks are indicative that this was not the defendant's first

2

foray into the laundering of illicit proceeds. In fact, just one month prior on May 4, 2017, the following telephone conversation took place between the defendant and Albert Veliu:

> VELIU: I wanted to ask you something bud.
>
> SEJDIJA: Whatever you want.
>
> VELIU: If I gave you . . . do you have a company?
>
> SEJDIJA: Yes.
>
> VELIU: If I give you money and you write me a check to another company?
>
> SEJDIJA: As much as you want.
>
> VELIU: No as much as I want, but I'll tell you how much I have.
>
> SEJDIJA: However much you like.
>
> VELIU: 243
>
> SEJDIJA: 243 when do you want it?
>
> VELIU: Well for, how quick can you give me a check? I'm thinking . . .
>
> SEJDIJA: I'll send the check now.
>
> VELIU: Yeah?
>
> SEJDIJA: They you go ahead and . . . I'll tell you in person because I don't like to talk about some things over the phone and I'll explain how that goes.
>
> VELIU: Yes, yes I know but I have, I have a limit that when I get that check it will take about a week and then the money is supposed to be there. That's the issue.
>
> SEJDIJA: You are my employee.
>
> VELIU: Yes.
>
> SEJDIJA: And I did some work for you and you do the things that need to be done.

3

While the defendant ultimately did not launder the $243,000 proposed by Veliu, his willingness to do so at a moment's notice is disturbing and refutes defense counsel's suggestion that the laundering of the $50,000 was simply a spot on the defendant's "otherwise law-abiding life."[1] Indeed, approximately one month later, the defendant made good on his promise to launder "as much as you want" when he agreed to launder $50,000 for Veliu. Thus, based on the charged conduct accounted for in the plea agreement, and the defendant's willingness to launder nearly a quarter- million dollars in funds, the government believes that a top of the Guidelines sentence is warranted in this matter.

A top of the Guidelines sentence is also necessary here in order to ensure that the sentencing goals of specific and general deterrence are appropriately met. With respect to specific deterrence, the imposition of a meaningful prison sentence will likely deter the defendant from reoffending. With regard to general deterrence, a top of the Guidelines sentence will send a strong message to the community that this type of criminal conduct will be punished with a term of incarceration. Such a sentence will make plain that money laundering, a crime that allows criminals to reap the fruits of their misdeeds, will simply not be tolerated.

IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence at or near 16 months, the top end of the applicable Guidelines, which is sufficient, but not greater than necessary, to achieve the goals of sentencing. See U.S.S.G. § 3553(a)(2).

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/
Michael T. Keilty
Assistant U.S. Attorney
(718) 254-7528

cc:   Lance Lazarro, Esq. (by ECF)
      Clerk of Court (KAM) (by ECF)

---

[1] The Superseding Indictment in this matter alleges that the defendant Dilber Kukic ultimately laundered the $243,000 for Veliu.

4